UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | ) |
| AIDA'S PARADISE., LLC, | )   Case No.  6:12-bk-00189-KSJ |
| | )   Chapter 11 |
| Debtor. | ) |
| | ) |

**MEMORANDUM OPINION DENYING TD
BANK'S MOTION TO STRIKE OR DISMISS DEBTOR'S
MOTION TO EQUITABLY SUBORDINATE UNSECURED CLAIM**

Aida's Paradise is a multi-member, Florida Limited Liability Company that owns valuable real property located on International Drive in Orlando's tourist corridor. Until recently, the Debtor leased a large portion of its holdings to a restaurant operated as the Salt Island Chophouse and Fish Market ("Salt Island"). The departure of Salt Island, which once contributed approximately 70% of the Debtor's rental revenue, is the subject of this dispute.

The Debtor now seeks to equitably subordinate TD Bank's unsecured deficiency claim in an adversary complaint and a corresponding motion to equitably subordinate,[1] arguing TD Bank unjustifiably thwarted the Debtor's attempt to evict Salt Island and improperly refused to allow the Debtor to timely release the restaurant space. TD Bank argues it was merely acting as a prudent lender pursuing collection of its sizeable claim and has filed a motion to motion to strike or to dismiss the Debtor's motion attempting to equitably subordinate its claim.[2] Because TD Bank's motion to strike another motion is improper, and because the Debtor has pleaded in its

---

[1] Doc. No. 69 (Motion to Equitably Subordinate); Adversary Proceeding No. 6:12-ap-00026-KSJ (complaint seeking equitable subordination of TD Bank's unsecured claim).
[2] Doc. No. 85. TD Bank also filed a motion permitting the use of Bankruptcy Rule 7012 (Doc. No. 122), which allows a party to use Federal Rule of Civil Procedure 12(f) to ask a court to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

consolidated adversary complaint detailed claims that set forth at least a plausible theory of liability, TD Bank's motion to strike or to dismiss is denied.

## **Debtor's Unproven Allegations Support Its Equitable Subordination Claim**

On December 1, 2003, the Debtor's principals allegedly took out a $5,000,000 loan from Colonial Bank, predecessor in interest to TD Bank, to purchase property on I-Drive.[3] As security for the loan, the Debtor and the Debtor's principals executed a mortgage and security agreement encumbering the real property, an assignment of leases, rents, and contract rights, and an unconditional guaranty in favor of Colonial Bank.[4] TD Bank acquired the note and other loan documents from Colonial Bank in October 2006, at which time the Debtor executed and delivered a renewed promissory note for $9 million secured by an updated mortgage encumbering the real property.[5]

Salt Island began leasing space for its sizeable, up-scale restaurant from the Debtor in 2004. Salt Island renewed the lease for a further five-year term in 2009.[6] The Debtor subordinated its leasehold interest in the Salt Island lease to TD Bank's first mortgage.[7]

In February 2009, the Debtor apparently fell behind on its loan payment to TD Bank, but allegedly quickly cured the monetary default in March.[8] Arguing the cure was incomplete,[9] TD Bank revoked its assignment of rents and directed all tenants, including Salt Island, to begin paying rent to TD Bank directly.[10] TD Bank refused to allow the Debtor to directly collect the rents until the Debtor executed a forbearance agreement, which included additional warranties

---

[3] Doc. No. 69 at 3.
[4] *Id.* at 3.
[5] *Id.* at 4.
[6] *Id.* at 3.
[7] Doc. No. 144 at 3 and Exhibit C.
[8] Doc. No. 69 at 5.
[9] TD Bank claims the Debtor did not cure all defaults and, specifically, that the Debtor owed its 2008 real property taxes and failed to produce financial statements as required under the loan documents.
[10] *Id.* at 5.

and representations and payment of TD Bank's legal fees.[11] The Debtor argues its real problems with TD Bank started when TD Bank refused to sign this forbearance agreement.[12]

To add to the Debtor's financial problems, beginning in April 2009, Salt Island started making only partial rent payments directly to TD Bank, which forced the Debtor to pay additional funds of its own to meet its monthly loan obligations.[13] From July 2009 to July 2010, the Debtor allegedly tried *repeatedly* to evict Salt Island but, because of TD Bank's continual acceptance of partial rent payments, the Debtor claims it was unable to complete the eviction process.[14]

TD Bank next offered to allow the Debtor to resume the direct collection of rent from Salt Island if the Debtor first would escrow $1.2 million. Debtor again refused, stating no provision in any loan document authorized TD Bank to demand such an escrow.[15] On July 21, 2010, TD Bank initiated foreclosure proceedings against the Debtor in Orange County, Florida.[16]

By that time, the Debtor had entered into discussions with a new potential tenant—Rothman's Orlando, LLC, a New York City steakhouse looking to enter the Orlando market. While the foreclosure was pending, the Debtor entered into a 15-year lease agreement with Rothman's for the Salt Island restaurant space, contingent upon TD Bank executing a non-disturbance agreement agreeing not to evict Rothman's upon a foreclosure of the Debtor's interest in the Property.

TD Bank allegedly declined to sign the non-disturbance agreement, instead adding Rothman's as a defendant to its foreclosure complaint.[17] The Debtor answered the foreclosure complaint with affirmative defenses of (1) estoppel; (2) unclean hands; (3) setoff; (4) failure to

---

[11] *Id.* at 6.
[12] Doc. No. 69 at 6.
[13] *Id.*
[14] *Id.* at 6-7.
[15] *Id.* at 7.
[16] *Id.* at 8. *Mercantile Bank v. Adil R. Elias, et al.,* Case No. 2010-CA-016620-O, Circuit Court for the Ninth Judicial Circuit in Orange County, Florida.
[17] *Id.* at 9.

mitigate; and (5) impossibility of performance because TD Bank had prevented the Debtor from evicting Salt Island.

On July 29, 2010, after fifteen months of making only partial rent payments and failing to secure a new tenant, Salt Island closed its doors and ceased operations.[18] On August 12, 2010, the Debtor regained possession of the former Salt Island space to find the property "significantly damaged" and "in overall poor repair."[19] The Debtor claims Salt Island tore the furniture, fixtures, and equipment ("FF&E") from the restaurant space after TD Bank sent a letter requesting their removal.[20] The Debtor filed four counterclaims against TD Bank in the state court foreclosure action alleging TD Bank:  (1) interfered with contractual relations; (2) interfered with an advantageous business relationship; (3) breached the implied covenant of good faith and fair dealing; and (4) breached its fiduciary duty as a lender. The parties filed cross motions for summary judgment, but, before the state court ruled on any of the issues, the Debtor filed for Chapter 11 bankruptcy protection.

Debtor's Schedule D lists a secured debt owed to TD Bank in the amount of $9 million. Both parties agree the real property securing the debt is worth vastly less than $9 million and that TD Bank has a very large unsecured, deficiency claim.[21] In its bankruptcy case, the Debtor filed a motion to equitably subordinate TD Bank's unsecured claim under Bankruptcy Code § 501(c), arguing the bank unduly dominated and controlled the Debtor's business decisions by constructively preventing the Debtor from evicting Salt Island, by unreasonably collecting partial rent, by requiring an unjusitified $1.2 million escrow, by unreasonably rejecting a proposed replacement tenant for the restaurant, and by instructing Salt Island to remove FF&E which

---

[18] Doc. No. 69 at 7.
[19] *Id.*
[20] *Id.*
[21] Doc. No. 25, Schedule D. The value of the real property and, as a result, TD Bank's secured and unsecured claims, will be determined at an oral ruling on the Debtor's Motion to Value the TD Bank's claims (Doc. No. 68) scheduled for January 7, 2013.

caused significant damage to the restaurant.[22] These claims are nearly identical to the Debtor's causes of action before the state court, now removed to this Court in the related adversary proceeding.[23] The Court consolidated the adversary proceeding with the Debtor's motion to equitably subordinate in the main case because the issues giving rise to the two matters involve the same facts and circumstances.[24] Both address Salt Island's failure to pay rent and the events leading up to Salt Island's ultimate eviction.

The Debtor argues it is entitled to the relief requested in both cases for the same reasons; because TD Bank actively frustrated the Debtor's efforts to evict Salt Island and secure a new tenant and because TD Bank's actions resulted in significant damage to the restaurant.[25]

### TD Bank's Motion to Strike or Dismiss is Denied

TD Bank filed a Motion to Strike, or alternatively a Motion to Dismiss, the Debtor's motion to equitably subordinate TD Bank's unsecured claim. Correspondingly, TD Bank requests the permission of the Court to use Bankruptcy Rule 7012, (which allows the use of Federal Rule of Civil Procedure 12(f)) to strike or dismiss the Debtor's adversary proceeding and similar motion to equitably subordinate.[26] TD Bank argues that, under Federal Rule of Civil Procedure 12(f), the Debtor's allegations are immaterial and have no legal consequences, as nothing in the loan documents prohibited TD Bank's actions.[27] TD Bank asserts it did not unduly control the Debtor's actions or usurp its authority with respect to Salt Island but merely exercised its rights granted under the loan documents.[28] For example, TD Bank argues the Assignment of

---

[22] Doc. No. 69 Motion to Equitably Subordinate Unsecured Claim of TD Bank. All references to the Bankruptcy Code shall be to 11 U.S.C. § 101 *et seq.*
[23] Adversary Proceeding No. 6:12-ap-00026-KSJ.
[24] Doc. No. 21 in Adversary Proceeding No. 6:12-ap-00026-KSJ (granting the Debtor's Motion to Consolidate Doc. No. 72).
[25] Doc. No. 72 at 2.
[26] Doc. No. 85 (TD Bank's Motion to Strike or Dismiss); Doc. No. 122 (TD Bank's Motion for Permission to use Bankruptcy Rule 7012 making Federal Rule of Civil Procedure 12(f) applicable.
[27] Doc. No. 85.
[28] Doc. No. 85 at 2-4.

Leases and Rents permitted the continued collection of rents after a default, even if later cured.[29] TD Bank further claims no loan document imposed any obligation on it to sign the proposed non-disturbance agreement with Rothman's or to prohibit TD Bank from collecting partial rent from Salt Island.[30] According to TD Bank, the Debtor always had the ability to evict Salt Island on its own, notwithstanding the assignment of rents.[31] Lastly, TD Bank argues it was entitled to ask Salt Island to remove its furniture and equipment and the Bank simply is not liable for the any damage caused by Salt Island in the removal.[32] In summary, TD Bank argues dismissal is appropriate because the Bank was merely acting as a prudent lender following the terms of the loan documents and protecting its investment.

The Debtor contests the motion to strike or dismiss first on procedural grounds,[33] then on the merits of its equitable subordination argument. The Debtor argues that the actions of TD Bank, viewed in the aggregate, demonstrate TD Bank's excessive dominion and control over the Debtor's operations and warrant subordination of the bank's unsecured claim.[34]

Understandably, TD Bank hotly contests the Debtor's efforts to equitably subordinate its claim. Of all the tools in a bankruptcy toolbox, equitable subordination has one of the most significant effects on the parties' rights because it permits a debtor to classify a large unsecured deficiency claim, such as TD Bank's, separately from the class of general unsecured claims.[35] For example, in this case, the Debtor's ability to reach confirmation of a Chapter 11 plan of reorganization hinges on whether the Debtor can subordinate TD Bank's unsecured claim behind

---

[29] *Id.* at 1–2; Doc. No. 144 at 2. TD Bank also argues all defaults were not cured because the Debtor was delinquent in paying 2008 real estate taxes and failed to provide quarterly financial statements to the bank, two non-monetary defaults under the loan documents.
[30] Doc. No. 85 at 2, 11-12.
[31] *Id.* at 9-10; Doc. No. 144 at 4 (pointing to Fla. Stat. § 83.202 which states "acceptance of the full amount of rent, with knowledge of a tenant's breach of the lease by non-payment shall be considered a waiver.").
[32] Doc. No. 85 at 2; Doc. No. 144 at 4.
[33] Doc. No. 120 at 2, in which the Debtor argues a motion to strike from a pleading, under Federal Rule of Civil Procedure 12(f), does not apply to motions.
[34] Doc. No. 120 at 5.
[35] 11 U.S.C. § 1122 (stating "Except as provided in (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class.").

the claims of the general unsecured class. If TD Bank's large unsecured deficiency is included in the general unsecured class, TD Bank can reject any plan the Debtor proposes because its size allows it to outvote the other unsecured votes in the class.[36] But, if the Debtor is permitted to classify TD Bank's unsecured deficiency in a separate subordinated class, the Debtor potentially could cram down a plan over TD Bank's objection if it obtains an acceptance from another impaired, accepting class likely the remaining unsecured creditors.[37] The Debtor's hope for a successful reorganization therefore floats on the viability of this tactic.

TD Bank requests that the Court strike the Debtor's equitable subordination attack because the Debtor's "allegations have no possible relation to the controversy, may confuse the issues, or may cause prejudice to one of the parties."[38] Even without reaching the merits of this argument, the improper use of a motion to strike cannot be overlooked. The Court agrees with the Debtor that TD Bank's motion to strike is not proper procedurally. Federal Rule 12(f) is not a mechanism that permits the filing of a "motion to strike another motion." The rule allows a court to strike a *pleading*, such as a complaint in an adversary proceeding, in part or in its entirety. A motion, such as the Debtor's motion to equitably subordinate TD Bank's claim, is not a pleading subject to a motion to strike, and thus TD Bank's request to use Federal Rule 12(f) is denied.[39]

---

[36] 11 U.S.C. § 1126(c).
[37] 11 U.S.C. § 1129(a)(10).
[38] *Regions Bank v. Commonwealth Land Title Ins. Co.,* 2012 WL 5410609 (S.D. Fla. Nov. 6, 2012) (citing *Seibel v. Society Lease, Inc.,* 969 F.Supp. 713, 714 (M.D. Fla. 1997)); *Fine's Gallery, LLC v. From Eur. To You, Inc*., 2011 U.S. Dist. LESIX 133357, *2 (M.D. Fla. 2011).
[39] *See Herrerra v. Michigan Dept. of Corr.,* 2011 WL 3862426 (E.D. Mich. July 22, 2011) (noting "Importantly, the rule provides that, except for a court-ordered reply to an answer, 'no other pleading shall be allowed.'"; (citing Fed. R. Civ. P. 7a). "Thus, motions, briefs, and affidavits do not constitute 'pleadings' subject to Rule 12(f)." *Id.* (citing *Trujillo v. Board of Educ. of the Albuquerque Pub. Schs.,* 230 F.R.D. 657, 660 (D. N.M. 2005); *Thomas v. Bet Sound–Stage Restaurant/BrettCo., Inc.,* 61 F.Supp.2d 448, 458 (D. Md. 1999); *United States v. Crisp,* 190 F.R.D. 546, 550 (E.D. Cal. 1999); and, *VanDanacker v. Main Motor Sales Co.,* 109 F.Supp.2d 1045, 1047 (D. Minn. 2000); *Jallali v. Am. Osteopathic Ass'n*, 2011 WL 2039532 (S.D. Fla. May 25, 2011); *Morroni v. Gunderson*, 169 F.R.D. 168, 170 (M.D. Fla. 1996 (citing Weiss v. PPG Industries, Inc., 148 F.R.D. 289, 292 (M.D. Fla. 1993); *See also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed.2004) (citations omitted).

For the same reason, TD Bank's motion to dismiss TD Bank's motion to equitably subordinate must be denied. A motion to dismiss under Rule 12(b)(6) may not be used to strike another routine motion. The rule is appropriately used to dismiss a *pleading* where a party has failed to properly state a claim for relief. The Debtor's motion to equitably subordinate is not a pleading subject to a motion to dismiss.

However, TD Bank's motion to dismiss *is* applicable to the Debtor's consolidated adversary complaint, which the Court may address on its merits. Dismissal is appropriate if the plaintiff "can prove no set of facts that would support the claims in the complaint."[40] As the Supreme Court recently has elaborated, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[41] A complaint that pleads facts merely consistent with a defendant's liability "stops short of the line between possibility and plausibility of entitlement to relief.'"[42]

To state a claim for equitable subordination in the Eleventh Circuit, the Debtor must make a plausible showing that (1) the creditor has engaged in some kind of inequitable conduct; (2) the conduct has injured other creditors or given the creditor an unfair advantage, and (3) subordination of the creditor's claim is not otherwise inconsistent with the Bankruptcy Code.[43] The burden of proof depends on the status of the creditor. If the creditor is an insider or a fiduciary, the trustee or debtor in possession must present material evidence of unfair conduct.[44] The burden then shifts to the creditor to prove it acted fairly in all transactions with the debtor or

---

[40] *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).
[41] *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556-57 & 570, 127 S. Ct 1955 (2007)).
[42] *Id.*
[43] *In re N & D Properties, Inc.,* 799 F.2d 726, 731 (11th Cir. 1986).
[44] *Id.* (citing *In re Multiponics,* 622 F.2d 709, 714 (5th Cir.1980)).

its claim will be subordinated.[45] If the creditor is *not* an insider or fiduciary, however, the debtor has a higher burden to prove with particularity more egregious conduct such as fraud, spoliation or overreaching.[46] Therefore, the standard the Court must apply depends on whether TD Bank somehow became the Debtor's fiduciary in its dealings concerning the Salt Island restaurant.

The Bankruptcy Code defines an insider as an officer, director, or person in control of the Debtor corporation.[47] Generally a creditor is not considered a fiduciary of a debtor, but this rule is not without exception.[48] A creditor who exerts so much control over the decision-making processes of a debtor such that it dominates the free will of the debtor may be held accountable as a fiduciary.[49] A debtor's lower burden of proof in achieving equitable subordination over a fiduciary is the price an over-controlling creditor pays for meddling too deeply into a debtor's affairs.

The motion before the Court today is TD Bank's motion to dismiss the Debtor's motion and complaint seeking equitable subordination of TD Bank's unsecured deficiency. The Court does not need to opine on whether TD Bank is a fiduciary or whether its claim should be subordinated. We leave those factual issues for another day based on evidence of the parties. The standard articulated in this Memorandum Opinion simply is instructive to the parties in their further discussions and negotiations. The Court here merely must determine whether the Debtor has met its pleading burden under Federal Rule 12(b)(6). The Court finds it has.

---

[45] *Id.*

[46] *In re N & D Properties, Inc.*, 799 F.2d at 731-32 (citing *In re Ludwig Honold Mfg. Co.,* 46 B.R. 125 (Bankr. E.D. Pa. 1985) and *In re W.T. Grant,* 699 F.2d 599 (2d Cir.1983)).

[47] 11 U.S.C. § 101(28)(B).

[48] *Matter of Teltronics Services, Inc.,* 29 B.R. 139, 169-70 (Bankr. E.D.N.Y. 1983) (stating "Apart from the provisions of bankruptcy law, such as the automatic stay on collection activity, a creditor normally has an unqualified right to call a loan when due, to refuse to extend a loan for any cause or no cause at all, and to lawfully enforce collection.").

[49] *Id.* at 170 (citing *In re Prima Co.,* 98 F.2d 952, 965 (7th Cir. 1938)) (noting "Where the creditor controls the corporate debtor by voting control of its stock, dominate influence in its management or ability, or otherwise to control its business affairs, the creditor may have a fiduciary duty to its corporate debtor.").

The Debtor's claim for equitable subordination goes beyond the minimum inferential requirement necessary to defeat TD Bank's motion to dismiss. The Debtor has outlined in detail allegations giving rise to numerous ways in which TD Bank presumably interfered with its operations and asserted unwarranted and unwelcomed control over its relationship with Salt Island.  The Debtor has stated with sufficient particularity why it claims TD Bank's actions were unfair and how they allegedly caused the Debtor harm.

Independently, each of TD Bank's decisions may be justifiable under the loan documents. Furthermore, TD Bank certainly is entitled to protect its own interests and investment and to drive a hard bargain.[50] However, even where all acts are technically or legally permissible, a lender must be careful not to become overly involved in a debtor's affairs.[51] "Whenever a creditor interferes in the business affairs of a financially troubled corporate debtor, it risks the possibility that such interference may provide a basis for the equitable adjustment of its claims against the debtor, the imposition of statutory liability, or the imposition of liabilities at common law."[52]

 The question is the level of degree, and whether TD Bank went too far in protecting its interest at the expense of the Debtor's ability to operate successfully. At the very least, the Court must look at the totality of the circumstances on a case-by-case basis[53] and question whether TD Bank violated the "rules of fair play and good conscience" in its dealings with the Debtor.[54]

In this case, the aggregate degree of TD Bank's control over the Debtor in declining to execute a non-disturbance agreement with a viable new tenant, in requiring additional warranties,

---

[50] *In re Cottonwood Corners Phase V, LLC*, 2012 WL 566426 (Bankr. D. N.M. Feb. 17, 2012) (declining to hold lender liable for failing to execute an SNDA to a prospective tenant while the debtor's loan was accelerated and the lender presented evidence that more favorable opportunities existed).
[51] *In re Am. Lumber Co.,* 5 B.R. 470, 473 (D. Minn. 1980) (finding equitable subordination appropriate where the lender, even with the technical authority to do so, exerted such control over the debtor as to perpetuate a fraud upon the general unsecured creditors).
[52] *Matter of Teltronics Services, Inc.,* 29 B.R. at 170 (citing Bartlett & Lapatin, *The Status of a Creditor as a Controlling Person,* 28 Mercer L. Rev. 639, 655–57 (1977)).
[53] *In re Aluminum Mills Corp.,* 132 B.R. 869, 893 (Bankr. N.D. Ill. 1991).
[54] *Matter of Teltronics Services, Inc.,* 29 B.R. at 168.

representations, and a substantial escrow of $1.2 million, and in continuing to redirect rents and forestall Salt Island's eviction, is a question of fact not appropriate for resolution at this motion to dismiss stage.[55]

At a minimum, the Debtor's allegations provide sufficient information to suggest TD Bank may have become a fiduciary, and the Debtor has stated a plausible claim for relief. TD Bank's motion to use Bankruptcy Rule 7012 and its motion to strike or dismiss the Debtor's *pleading* in the consolidated adversary are denied. And, as stated, TD Bank's motion to use Bankruptcy Rule 7012 and its motion to strike or dismiss the Debtor's *motion* to equitably subordinate TD Bank's claims also are denied because they are not procedurally proper. A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on January 14, 2013.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

---

[55] *See Luria v. United States Department of Agriculture* (*In re Taylor Bean & Whittaker Mortgage Corporation*) 3:11-ap-535-JAF (citing *HLI Creditor Trust v. Export Corp. (In re Hayes Lemmerz Int'l, Inc.,* 313 B.R. 189 (Bankr. D. Del. 2004)).